IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| IMMC CORPORATION, | : | |
| f/k/a IMMUNICON CORPORATION, *et al.*, | : | Bankr. Case No. 08-11178 (KJC) |
| | : | |
| Debtors. | : | |
| ——————————————— | : | |
| ROBERT F. TROISIO, as Liquidating Trustee | : | |
| of IMMC CORPORATION, | : | |
| f/k/a IMMUNICON CORPORATION, | : | Adv. Proc. No. 10-53063 (BLS) |
| | : | |
| Appellant, | : | Civ. No. 15-1043 (GMS) |
| v. | : | |
| | : | |
| EDWARD L. ERICKSON, BYRON HEWETT, | : | |
| LEON TERSTAPPEN, JAMES L. WILCOX, | : | |
| ELIZABETH E. TALLETT, J. WILLIAM | : | |
| FREYTAG, ZOLA P. HOROWITZ, JAMES | : | |
| G. MURPHY, BRIAN GEIGER, JONATHAN | : | |
| COOL, and ALLEN J. LAUER, | : | |
| | : | |
| Appellees. | : | |

## **MEMORANDUM OPINION**

Presently before the court is the motion (D.I. 9) ("Motion to Reopen") of appellant Robert

F. Troisio ("Appellant"), liquidating trustee of IMMC Corporation (f/k/a Immunicon Corporation),

seeking an order reopening the above-captioned appeal ("Appeal") so that parties may proceed on

the merits before the Court. The Motion to Reopen follows the court's Memorandum Opinion

(D.I. 7) and Order (D.I. 8) ("Certification Order") granting Appellant's motion for certification of

direct appeal to the United States Court of Appeals for the Third Circuit (D.I. 2) (the "Certification

Motion"), and Appellant's subsequent failure to file a request for permission with the circuit clerk

as required by Federal Rule of Bankruptcy Procedure 8006(g). For the reasons set forth herein,

the Motion to Reopen is granted, and Appellant is directed to show cause why Appellant should

not reimburse Appellees for the fees and costs incurred in opposing the Certification Motion.

1

1.    Background[1]

A.    The Adversary Proceeding

On June 11, 2008, the above-captioned debtors filed a petition for relief under Chapter 11 of the Bankruptcy Code.   On November 7, 2008, the Bankruptcy Court confirmed the debtors' plan of liquidation.   Pursuant to the plan, Appellant was appointed as liquidating trustee to implement wind-down of the debtors' affairs and liquidation of the debtors' property, and also to pursue certain causes of action.  On September 18, 2010, Appellant filed a complaint initiating the above-captioned adversary proceeding and asserting breach of fiduciary duty claims against the debtors' former officers and directors ("Appellees").   (*See* Adv. Proc. No. 10-53063-KJC (hereinafter "B.D.I.") 1.)   By Memorandum Order dated December 29, 2011 (B.D.I. 33), the Bankruptcy Court determined that it was without jurisdiction to decide the claims asserted in the adversary proceeding but scheduled a further hearing to consider Appellant's request that the Bankruptcy Court transfer the adversary proceeding to the District Court for the Eastern District of Pennsylvania (the "E.D.Pa. Court") pursuant to 28 U.S.C. § 1631, rather than dismiss the case for want of jurisdiction. *See Troisio v. Erickson (In re IMMC Corp.)*, Adv. No. 10-53063-KJC, 2011 WL 6832900, *4 (Bankr. D. Del. Dec. 29, 2011).

B.    Motion to Transfer the Case

Whether the Bankruptcy Court has authority to transfer the adversary proceeding to the E.D.Pa. Court is governed by 28 U.S.C. § 1631, which provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been

---

[1] Because the court writes primarily for the benefit of the parties, the court presumes familiarity with the pertinent background facts.

brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631. In response to Appellant's request to transfer the case, Appellees argued that the Bankruptcy Court lacked authority to transfer the adversary proceeding under § 1631 because a bankruptcy court is not a "court" as defined in 28 U.S.C. § 610. Section 610 provides:

As used in this chapter the word "courts" includes the courts of appeals and district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of International Trade.

28 U.S.C. § 610. Appellees argued that bankruptcy courts are not included in the express language of 28 U.S.C. § 610 and that a review of legislative history demonstrates Congressional intent to limit the transfer power of § 1631 and likewise to exclude bankruptcy courts from the definition of "courts" under § 610. Conversely, Appellant argued that the Third Circuit has recognized a bankruptcy court's authority to transfer cases pursuant to § 1631 in the *Seven Fields* case, in which the Third Circuit stated in a footnote that bankruptcy courts are units of the district courts and authorized to transfer a case. *See Seven Fields Dev. Corp.*, 505 F.3d 237, 247 n.8 (3d Cir. 2007).

    C.    The 2012 Decision

Following briefing and oral argument, the Bankruptcy Court denied the request to transfer the adversary proceeding to the E.D.Pa. Court. *See Troisio v. Erickson (In re IMMC Liquidating Estate)*, Adv. No. 10-53063-KJC, 2012 WL 523632, at *4 (Bankr. D. Del. Feb. 14, 2012). In reaching its conclusion, the Bankruptcy Court noted that the footnote in *Seven Fields* was *dicta*, and the exclusion of bankruptcy courts from the express language of §§ 1631 and 610, together with the legislative history of those sections, cast doubt as to the Bankruptcy Court's authority to

3

transfer the adversary proceeding. *See id.* at *2. As part of that ruling, however, the Bankruptcy Court granted Appellant's request for an opportunity to file a motion with this court to withdraw the reference, as district courts are authorized under the statute to make transfers to other courts. *See id.* at *4. On February 9, 2015, this court denied Appellant's motion to withdraw the reference, concluding that because bankruptcy jurisdiction was lacking, the action was never properly "referred" to the Bankruptcy Court, and this court could not withdraw a reference that never existed. *See Troisio v. Erickson (In re IMMC Corp.)*, Civ. No. 12-406-GMS (D. Del. Feb. 9, 2015) (citing 28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding *referred under this section* . . .") (emphasis added)).

     D.    The 2015 Decision

     On February 19, 2015, the Appellant filed with the Bankruptcy Court a renewed motion to transfer the adversary proceeding to the E.D.Pa. Court, which cited *In re DMW Marine, LLC*, 509 B.R. 497 (Bankr. E.D. Pa. 2014) in support. (*See* B.D.I. 58.) In support of the renewed motion, Appellant also submitted a Notice of Supplemental Authority, which cited *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015). (*See* B.D.I. 64.) Following oral argument (*see* B.D.I. 65), the Bankruptcy Court denied the renewed motion and dismissed the complaint, finding that neither of the decisions cited by Appellant addressed the transfer issue and that the Bankruptcy Court "remain[ed] convinced that the express language and legislative history of § 610 support the proposition that Congress did not intend to include bankruptcy courts in the definition of 'courts.'" *See Troisio v. Erickson (In re IMMC Liquidating Estate)*, Adv. No. 10-53063-KJC, 2015 WL 6684638, at *2 (Bankr. D. Del. Oct. 30, 2015) (the "2015 Decision").

     On November 11, 2015, Appellant filed a notice of appeal of the 2012 Decision and the 2015 Decision. (*See* B.D.I. 70.) On the same day, Appellant filed the Certification Motion. (*See*

B.D.I. 72; D.I. 2.) The Certification Motion presented the question of "Whether bankruptcy judges have the authority to order a transfer of an adversary proceeding pursuant to 28 U.S.C. § 1631." (*See* D.I. 2 at 1.) The court considered the relief sought in the Certification Motion pursuant to Federal Rule of Bankruptcy Procedure 8006(b) and (d).[2]

E.   Certification Order and Motion to Reopen

On January 28, 2016, the court issued the Certification Order granting direct appeal to the Third Circuit on the basis that the appeal raises a question of law as to which there is no controlling decision of the Third Circuit or Supreme Court. *See* 28 U.S.C. § 158(d)(2)(A)(i). Thereafter, Appellant was required to file with the circuit court clerk a "request for permission to take a direct appeal to the court of appeals" within 30 days (*i.e.*, no later than February 29, 2016). *See* Fed. R. Bankr. P. 8006(g) ("Within 30 days after the date the certification becomes effective . . . , a request for permission to take a direct appeal to the court of appeals must be filed with the circuit clerk . . ."). Appellant failed to file any request for permission with the circuit clerk. The docket reflects that the case was administratively closed by the court on March 24, 2016. On April 12, 2016, the Appellant filed the instant Motion to Reopen seeking permission to proceed with the appeal in this court.

The Motion to Reopen is nine sentences in length and offers no explanation for the Appellant's failure to comply with "Subdivision (g) [of Rule 8006], which *requires* that, once a certification for direct review is made, a request to the court of appeals for permission to take a

---

[2] Fed. R. Bankr. P. 8006(d) provides "Only the court where the matter is pending, as provided in subdivision (b), may certify a direct review on request of parties . . . " *See* Fed. R. Bankr. P. 8006(d). Fed. R. Bankr. P. 8006(b) provides that any certification must be filed with the clerk of the court where the matter is pending, and, for purposes of this rule, a matter remains pending in the bankruptcy court for 30 days after the effective date of the first notice of appeal (pursuant to Fed. R. Bankr. P. 8002) for which direct review is sought, and is thereafter pending in the district court. *See* Fed. R. Bankr. P. 8006(b).

direct appeal to that court must be filed with the clerk of the court of appeals no later than 30 days after the effective date of the certification." *See* Fed. R. Bankr. P. 8006 Advisory Committee Note (2014) (emphasis added).   The Motion to Reopen merely states that "the Third Circuit never acquired jurisdiction over the Liquidating Trustee's appeal[,] and the Trustee's appeal therefore remains pending before this Court." (*See* D.I. 9 at 2.)

2.    Parties' Contentions

        Appellees oppose the relief sought in the Motion to Reopen and request the court dismiss the appeal with prejudice pursuant to Fed. R. Bankr. P. 8003(a)(2), which provides: "An appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the district court . . . to act as it considers appropriate, including dismissing the appeal." Fed. R. Bankr. P. 8003(a)(2).   Thus, Rule 8003(a)(2) authorizes dismissal for failure to comply with a non-jurisdictional, procedural guidelines such as Rule 8006(g).   Appellees argue that such a "non-jurisdictional, procedural defect, when coupled with a finding of either prejudice to the appellee or bad faith on the part of the appellant may serve as a proper basis to dismiss." (*See* D.I. 10 at 4-5, citing *In re SB Props., Inc.*, 185 B.R. 198, 202 (E.D. Pa. 1995)).   Appellees argue that both bad faith and prejudice are present in this case.   Appellees argue that bad faith is evidenced by the Appellant's failure, in its Motion to Reopen the case, to offer any explanation for its failure to comply with Rule 8006(g), any apology for wasting the time and resources of the court on the Certification Motion, or any reimbursement to Appellees for fees and costs incurred in opposing the Certification Motion. (*See* D.I. 10 at 5.)   Appellees further argue that Appellant's failure to offer any explanation for noncompliance opens the possibility that it was intentional or strategic – presumably, delay as a litigation tactic.   (*See id.* at 5, n.4.)   Appellees also contend that they have been prejudiced by the

6

defective pursuit of certification, which caused a delay of over five months and unnecessary expenditure of attorney's fees. (*See id.* at 6.)  Should the court decide that dismissal is inappropriate, and reopen the case, Appellees urge the court to require Appellant, as a condition of reopening the case, to reimburse Appellees for the fees they incurred in opposing the Certification Motion. (*See id.* at 6-7.)

Appellant responds that failure to comply with Rule 8006(g) does not affect the validity of the appeal, and the court retains jurisdiction. (*See* D.I. 11 at 4.)  In support of its position, Appellant cites *In re Smith*, 435 B.R. 637 (B.A.P. 9th Cir. 2010), a case in which, as here, the appellant, having obtained certification of direct appeal from the court below, failed to file with the circuit court the request for permission required by Rule 8006(g).  In *Smith*, however, the bankruptcy appellate panel simply concluded that it retained jurisdiction over the appeal pursuant to 28 U.S.C. § 158 and proceeded to rule on the appeal's merits, without any consideration of sanctions. *Smith* therefore provides no guidance on the issue of whether dismissal of the appeal or some other sanction may be appropriate.  With respect to Appellees' argument for sanctions, Appellant argues that Appellees have not demonstrated bad faith or prejudice that would justify dismissal.

3.    Discussion

"Both the Federal Rules of Civil Procedure and a court's inherent authority to control its docket empower a district court to dismiss a case as a sanction for failure to follow procedural rules or court orders." *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013).  If an appellant fails to adhere strictly to guidelines for filing appeal from decision of bankruptcy court, the reviewing court may take any measures that it deems appropriate, including dismissal. *See* Fed. R. Bankr. P. 8003(a)(2); *In re Weiss*, 111 F.3d 1159, 1173 (4th Cir.  1997).  District courts have indeed found dismissal appropriate for failure to comply with the deadlines set forth in the

Federal Rules of Bankruptcy Procedure. *See, e.g., In re Advance Cellular Systems, Inc.,* 262 B.R. 10, 17 (D. P.R. 2001) (dismissing bankruptcy appeal as sanction for appellant's delay in filing designation of items and statement of issues in accordance with Rule 8009 deadline, where appellants were at least negligent in missing deadline by more than 40 days, where their conduct prejudiced debtor and efficient administration of justice, and where appellants' explanation for delay was wholly lacking); *Stritzinger v. Bankruptcy Court,* 2015 WL 9916169 at *2 (D. S.C. July 6, 2015) (upholding dismissal of appeal upon failure to pay filing fee, file designation of record and statement of issues on appeal, and comply with court directives); *In re Serra Builders,* 970 F.2d 1309, 1311 (4th Cir. 1992) (upholding dismissal of appeal where appellant filed designation of record and statement of issues on appeal 15 days late); *Weiss,* 111 F.3d at 1173 (upholding dismissal of appeal for failure to file appellate brief within required period).

However, "[n]ot every failure to follow procedural rules mandates dismissal." *In re Comer,* 716 F.2d 168, 177 (3d Cir. 1983). Dismissal for failure to comply with a non-jurisdictional, procedural guideline is a harsh and drastic sanction. *See Donnelly v. Johns-Manville Sales Corp.,* 677 F.2d 339, 342 (3d Cir. 1982) ("dismissal is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff"); *Poulis v. State Farm Fire and Cas. Co.,* 747 F.2d 863, 867 (3d Cir. 1984) (noting consistency in Third Circuit rulings emphasizing extreme nature of a dismissal with prejudice); *Serra,* 970 F.2d at 1311 (recognizing dismissal for failure to comply with non-jurisdictional, procedural guideline as harsh sanction which district court must not impose lightly); *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643 (1976) (upholding dismissal based upon plaintiffs' "flagrant bad faith" and counsel's "callous disregard" of responsibilities).

An order of dismissal deprives a party of its day in court, and the Third Circuit has observed that dismissal with prejudice is only appropriate in limited circumstances. *See Adams v. Trustees of the New Jersey Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 870 (3d Cir. 1994) (citing *Scarborough v. Eubanks*, 747 F.2d 871, 875 (3d Cir. 1984)). The Third Circuit adheres to the view that "[d]ismissal must be a sanction of last, not first, resort," and cites the Court's primary concern as "preserv[ing] the ability of the parties to try their cases on the merits." *See Poulis*, 747 F.2d at 869; *Knoll*, 707 F.3d at 410. Where, as here, a sanction would effectively dictate the result of the case, the court must consider the following factors set forth by the Third Circuit: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to comply with the deadline; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *See Poulis*, 747 F.2d at 868. In considering whether dismissal is an appropriate sanction under the six *Poulis* factors, the court will address the fifth *Poulis* factor, effectiveness of other sanctions, last.

The first *Poulis* factor "primarily concerns the degree to which a party is responsible for its counsel's misconduct." *See Poulis*, 747 F.2d at 868. Appellant has failed to set forth any explanation that would provide the court with insight as to whether Appellant shares responsibility with counsel for noncompliance. While this factor does not weigh in favor of dismissal, absent any explanation, it does not weigh against dismissal either.

As to the second *Poulis* factor, prejudice to Appellees resulting from Appellant's noncompliance is apparent to the court and weighs in favor of dismissal. Evidence of prejudice to an adversary "would bear substantial weight in support of a dismissal or default judgment"

and includes "excessive . . . burdens or costs imposed on the opposing party. *See Scarborough,* 747 F.2d at 876. Here, Appellees were required to expend significant time and resources to address the Certification Motion, and Appellant's subsequent failure to properly pursue an appeal in the Third Circuit caused Appellees to waste time and money. More important, this matter was first decided below by order dated February 14, 2012 – four years prior to Appellant's request for direct appeal. Thus, Appellant's failure resulted in a five-month delay in already lengthy litigation over the transfer issue. Put simply, this failure has been prejudicial to Appellees in the form of additional costs and needless additional delay in the efficient administration of the bankruptcy estates. *See e.g., Advanced Cellular,* 262 B.R. at 16 (noting "[i]n the bankruptcy context, the heightened urgency of the proceedings makes the failure to adhere to deadlines even more deplorable").

The third *Poulis* factor requires the court to determine whether there has been "extensive or repeated delay or delinquency [which] constitutes a history of dilatoriness." *See Poulis,* 747 F.2d at 868. Appellees have not pointed to other deadlines missed by the Appellant in the case. Appellees summarize the long procedural history underlying Appellant's attempts to transfer the case to the E.D.Pa. Court (*see* D.I. 10 at 1-3), and characterize Appellant's failure to comply with Rule 8006(g) as "only the latest example in a *five and a half year* odyssey during which the Bankruptcy Court and this Court have indulged [Appellant's] procedural flights of fancy" (*see id.* at 6). Notwithstanding Appellees' characterizations, there is not "a clear record of delay or contumacious conduct" that would require dismissal. Therefore, this factor does not weigh in favor of dismissal. *See Donnelly,* 677 F.2d at 342.

With respect to the fourth factor, whether the Appellant's conduct was willful or in bad faith, the court is troubled by Appellant's complete lack of explanation for his noncompliance

with Rule 8006(g).  *See e.g., Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (upholding

dismissal of appeal as sanction for failure to adhere to Bankruptcy Rules and timely file appeal

brief, where appellant provided no explanation or excuse for noncompliance with filing

deadlines).  However, "[w]illfulness involves intentional or self-serving behavior."  *See Adams*,

29 F.3d at 875.  Appellees argue that Appellant's failure to comply with Rule 8006(g) could

never be regarded as excusable under any circumstances.  (*See* D.I. 10 at 5, n.4.)  The court

cannot agree.  Although, without some explanation, the court can only conclude that Appellant's

noncompliance was the result of either carelessness or perhaps a deliberate strategy to delay the

proceedings, based on the record, the court will not call Appellant's delay willful.  There is no

evidence it was strategic or self-serving; "rather, it is a prime example of inexcusable negligent

behavior."  *See Adams,* 29 F.3d at 876.

        The next *Poulis* factor that the court will consider is the merit of Appellant's claim.  The

test for examining the merits of a party's position under *Poulis* is not intended to be rigid.  *See*

*Poulis*, 747 F.2d at 869; *Adams*, 29 F.3d at 876-77.  "[W]e do not purport to use summary

judgment standards.  A claim, or defense, will be deemed meritorious when the allegations of the

pleadings, if established at trial, would support recovery by plaintiff or would constitute a

complete defense."  *Poulis*, 747 F.2d at 869-70.  Here, the legal question is the bankruptcy

court's ability to transfer the case to the E.D.Pa. Court pursuant to 28 U.S.C. § 1631.  The court

earlier concluded that there was a lack of controlling authority and certified the question directly

to the Court of Appeals.  Thus, this factor weighs against dismissal.

        With respect to the final *Poulis* factor, having evaluated the conduct at issue, the court

must specifically consider the range of permissible sanctions and explain why less severe

alternatives to the sanction imposed are inadequate or inappropriate.  *See Republic of Philippines*

*v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994). Although the court need not "exhaust all other sanctioning mechanisms prior to resorting to its inherent power" (*Landon v. Hunt,* 938 F.2d at 450, 454 (3d Cir. 1991)), the court must explain why it has chosen any particular sanction from the range of alternatives it has identified. *See Poulis,* 747 F.2d at 868.

Having reviewed the conduct at issue, the court finds that Appellant's noncompliance justifies dismissal pursuant Rule 8003(a)(2). Appellant required the court to expend significant time and resources in determining whether certification of direct appeal was appropriate. The two primary goals behind the direct certification process are (i) to provide a quicker and less costly means of resolving significant issues that are inevitably bound for the court of appeals, and (ii) to facilitate the development of more binding precedents in bankruptcy law. *See In re Qimonda AG*, 470 B.R. 374, 384-85 (E.D. Va. 2012). In seeking certification, Appellant allegedly sought prompt adjudication by the Third Circuit, arguing that this court's consideration of the question of law would constitute an unnecessary "delay."[3] Having sought to bypass this court, and having received the relief requested, Appellant then failed to perfect his appeal in the Third Circuit. In sum, Appellant's failure squandered court resources, increased litigation costs, and created a needless five-month delay in the progress of the Appeal. Thus, Appellant's failure clearly undermined the goals of the direct certification process. Such noncompliance with procedural requirements coupled with a lack of explanation is inexcusable, and the court is reluctant to set a precedent that such rules may be ignored without consequence. *See e.g., In re Scheri*, 51 F.3d 71, 75 (7th Cir. 1995) ("[A] dilatory litigant . . . threatens progress not only in the

---

[3] "[I]f an intermediate appeal is taken to the District Court, there is a likelihood that the losing party will appeal to the Third Circuit, resulting in additional expenses, duplication of judicial resources, and delay caused by a dual appellate process. A direct appeal will enable the Third Circuit to settle the matter relatively promptly." (D.I. 2 at 4 (Appellant's brief in support of certification.))

resolution of the case before the court but also in the many other matters that await the time and attention of the district court.") The court is persuaded by Appellees' argument that "if statutes like [Rule] 8006(g) are not to be rendered superfluous, and instead be given legal effect" there must be some consequence for failure to meet their requirements. (*See* D.I. 10 at 6.) However, given the Third Circuit's guidance concerning the appropriate exercise of discretion by trial judges when considering sanctions, the court is reluctant to deny Appellant his day in court. *See Adams*, 29 F.3d at 870. The court therefore considers other available sanctions and whether a lesser sanction would serve the interests of justice. *See Donnelly*, 677 F.2d at 342.

Appellees have suggested that, in lieu of dismissal, the court should award the fees and costs Appellees incurred in opposing certification. (*See* D.I. 10 at 6-7.) A court may assess attorney's fees when "a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal citations and quotation marks omitted). To cavalierly waste the court's resources without explanation rises to the level of either wanton conduct (insomuch as it is careless or reckless with respect to procedural requirements) or bad faith (insomuch as noncompliance was a deliberate litigation strategy). Whether noncompliance was negligent or willful, it indisputably caused delay. "Delay or disruption . . . is a factor that a court could use to determine whether the accused party acted in bad faith." *See Novartis Pharmaceuticals Corp. v. Par Pharmaceutical, Inc.*, 2014 WL 1266320, *3 (D. Del. Mar. 26, 2014) (considering sanction of attorney's fees

award).  The Supreme Court has recognized that delay or disruption of litigation is a subset of a party "acting in bad faith, vexatiously, wantonly, or for oppressive reasons." *See id.* (citing *Chambers*, 501 U.S. at 45-46).  Because the prejudice to Appellees includes, at a minimum, the fees and costs incurred in opposing the Certification Motion, the court finds it appropriate to require Appellant to reimburse Appellees for those fees and costs.  Although it may not compensate Appellees for prejudice or delay, this lesser sanction is tailored to redress Appellees' harm and may "chasten effectively without the extreme result of depriving Appellant of the right to have its claim adjudicated on the merits." *See Adams*, 29 F.3d at 876 (internal citations and quotation marks omitted).

Having set forth the sanction with particularity, the court will provide Appellant with an opportunity to respond, as the Due Process Clause of the Fifth Amendment requires a federal court to provide notice and an opportunity to be heard before sanctions are imposed on a litigant. *See Landon,* 938 F.2d at 454; *Eash v. Riggins Trucking, Inc.,* 757 F.2d 557, 570-71 (3d Cir. 1985).

4.    Conclusion

For the foregoing reasons, the court will grant the Motion to Reopen and direct Appellant to show cause why Appellant should not be required to reimburse Appellees for the fees and costs incurred in opposing the Certification Motion.  A separate order consistent with the foregoing will be entered.

May _17_, 2016

UNITED STATES DISTRICT JUDGE